LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――

TRINIDAD VARGAS,
*on behalf of herself, FLSA Collective Plaintiffs*
*and the Class,*

      Plaintiff,

      v.

PIER 59 STUDIOS L.P., and
FEDERICO PIGNATELLI,

      Defendants.

―――――――――――――――――――――――――

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

      Plaintiff, TRINIDAD VARGAS ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, PIER 59 STUDIOS L.P. (the "Corporate Defendant"), and FEDERICO PIGNATELLI (the "Individual Defendant," and collectively with the Corporate Defendant, the "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) liquidated damages and (3) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) statutory penalties, (3) liquidated damages pursuant to the New York Labor Law, and (4) attorneys' fees and costs.

3.      Plaintiff further alleges that she was deprived her statutory rights as a result of Defendants' unlawful discrimination practices under New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-502 ("NYCHRL") and brings this action against Defendants to recover (1) back pay, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because they arise from a common nucleus of operative facts with the fedeal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Consitution.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391 because Defendants conduct business and can be found in this district and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and because the alleged unlawful employment practice was committed in this district and employment records relevant to such practice are maintained and administered in this district.

## PARTIES

7.      Plaintiff, TRINIDAD VARGAS, is a resident of Queens County, New York.

8.      Corporate Defendant PIER 59 STUDIOS L.P. is a foreign limited partnership organized under the laws of the State of Delaware, with an address for principal place of business located at 59 Chelsea Piers, Level 2, New York, NY 10011 and an address for service of process located at c/o Mark L. Cortegiano, 65-12 69th Place, Middle Village, NY 11379.

9.      Individual Defendant, FEDERICO PIGNATELLI, is the managing partner, chairman and chief executive officer of PIER 59 STUDIOS L.P. FEDERICO PIGNATELLI exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. He exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to FEDERICO PIGNATELLI directly regarding any of the terms of their employment, and FEDERICO PIGNATELLI would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. FEDERICO PIGNATELLI exercised functional control over the business and financial operations of the Corporate Defendant.

3

FEDERICO PIGNATELLI had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

10.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, New York Labor Law, and the Regulations thereunder.

11.     At all relevant times, Defendants were and continue to be an employer within the meaning of the New York State Human Rights Law,  the New York City Human Rights Law, and the Regulations thereunder.

12.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt cleaning persons employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

14.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper wages and overtime premium due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

15.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective

Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

16.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt cleaning persons employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

17.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

18.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

19.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same

corporate practices of Defendants of (i) failing to pay proper wages and overtime premium due to time shaving, (ii) failing to provide proper wage statements that were in compliance with the requirements under the New York Labor Law, and (iii) failing to provide proper wage and hour notice to Class members, at date of hiring and annually, per requirements of the New York Labor Law.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

20.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

21.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation

claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

23.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

     a.   Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

     b.   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d.  Whether Defendants properly notified Plaintiff and the Class members of their hourly rate and overtime rate;

e.  Whether Defendants provided proper wage statements to Plaintiff and the Class members per requirements of the New York Labor Law;

f.  Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to all employees per requirements of the New York Labor Law; and

g.  Whether Defendants properly compensated Plaintiff and Class members for all hours worked under state and federal law.

## STATEMENT OF FACTS

24.    In or around June 2013, Plaintiff TRINIDAD VARGAS, was hired by Defendants to work as a cleaning person for Defendants' "Pier 59 Studio" fashion business, located at 1109 Fifth Avenue, New York, New York 10128. Plaintiff's employment was wrongfully terminated by Defendants on or about November 30, 2016.

25.    At all times, Plaintiff regularly worked over forty (40) hours per workweek. Throughout her employment by Defendants, Plaintiff's scheduled working hours were from 5:00 p.m. until 2:00 a.m., for five (5) days per week. Plaintiff worked a total of approximately forty (45) hours per week throughout her employment by Defendants. FLSA Collective Plaintiffs and Class members worked similar hours as Plaintiff.

26.  Throughout her employment, Plaintiff was compensated at a regular rate of $12.00 per hour for hours worked up until forty (40) hours per workweek.

8

27.   Throughout her entire employment, Plaintiff was not properly compensated her proper wages for all hours worked, due to Defendants' policy of time-shaving. From in or around 2015, Plaintiff, FLSA Collective Plaintiffs and Class members were all required to clock-in. While the clock-in machine generally worked at the beginning of the shift, the machine failed to record Plaintiff's, FLSA Collective Plaintiffs' and Class members' clock-out time. As a result, Plaintiff's, FLSA Collective Plaintiffs' and Class members' clock-out time records were kept manually. From in or around 2015, the new manager, Robert [LNU] ("Last Name Unknown") adjusted Plaintiff's, FLSA Collective Plaintiffs' and Class members' work hours on a weekly basis such that they were paid for several hours fewer than actually worked per week. Defendants' policy to manually adjust the hours was intended to ensure that Defendants were not required to compensate Plaintiff, FLSA Collective Plaintiffs and Class members their overtime premium.

28.   Defendants failed to maintain proper employment records, as required by the FLSA and NYLL. At all relevant times, Defendants provided fraudulent wage statements to Plaintiff, which failed to accurately show the number of hours worked by Plaintiff in a given workweek and were below forty (40). Class Members received similar fraudulent wage statements due to Defendants' policy of time shaving.

29.   Defendants never provided Plaintiff and Class Members with proper wage notices, as required by the NYLL.

30.   At no time during the relevant time periods did Defendants provide Plaintiff or Class members with proper wage statements, as required by the NYLL. Plaintiff and Class members received fraudulent wage statements that did not accurately reflect the hours that they worked, as Defendants failed to accurately maintain such records.

31.     Defendants unlawfully failed to pay Plaintiff, FLSA Collective Plaintiffs, and members of the Class either the FLSA overtime rate (of one and one half the regular rate) or the New York State overtime rate (of one and one half times the regular rate) for hours they worked in excess of forty (40) each workweek due to Defendants' policy of time-shaving.

32.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiff, FLSA Collective Plaintiffs and Class members due to Defendants' policy of time-shaving.

33.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

34.     Defendants failed to provide proper wage notices to employees, at the beginning of employment and annually thereafter, pursuant to the requirements of the New York Labor Law.

35.     During Plaintiff's employment by Defendants, Defendants permitted managerial employees to foster a hostile work environment. In or around 2015, Defendants hired Robert [LNU] as a manager. During the entire first week of Robert [LNU]'s employment, he stood directly behind Plaintiff for the duration of her entire workweek while she worked. When Plaintiff confronted Robert [LNU], he told her that he was watching her because she had a big butt. Robert [LNU] continued to sexually harass her by standing directly behind her, watching her butt as she bent over to clean.

36.     Approximately two weeks after Robert [LNU] began his employment with Defendants, Plaintiff reported Robert [LNU]'s sexual harrasment to Verve [LNU], one of Defendants' managers. After Plaintiff complained to Verve [LNU], Robert [LNU] stopped standing behind her to stare at her butt. However, approximately a week later, Plaintiff

overheard Robert [LNU] making derogatory jokes with other male co-workers that he needed a Dominican woman with a large butt and commented that he wondered if Plaintiff's daughter also had a large butt.

37.     After Plaintiff complained to Verve [LNU] regarding Robert [LNU], Robert [LNU] assigned David Rodriguez to monitor and supervise Plaintiff's work. Mr. Rodriguez's sole purpose was to monitor Plaintiff and to report back to Robert [LNU]. Prior to Robert [LNU]'s employment with Defendants, for approximately two years, Plaintiff worked under minimal supervision. Her supervisors would occasionally check in with her. However, pursuant to Robert [LNU]'s instructions, Mr. Rodriguez monitored Plaintiff round-the-clock. For her entire workday, for five days a week, Mr. Rodriguez was a constant presence, and his sole job, from 5:00pm until 2:00am, was to spy on Plaintiff. Mr. Rodriguez monitored Plaintiff from in or around 2015 until she was wrongfully terminated on or about November 30, 2016. Mr. Rodriguez never provided any feedback related to her position.

38.     Compared to her male counterparts who were also cleaners, Plaintiff was the only cleaning person subjected to round-the-clock supervision after Robert [LNU] was hired as a manager in or around 2015. In addition to his blatant, disparate treatment of her due to her sex/gender, Plaintiff also believed that Robert [LNU] monitored her as she complained of his sexual harassment, causing him to foster a hostile workplace environment against Plaintiff to pressure her to quit. Throughout her employment, Robert [LNU] never referred to her by her name, he would only refer to her as "the lady."

39.     Robert [LNU]'s sexual harrassment continued throughout Plaintiff's employment with Defendants. In or around late-spring of 2016, Plaintiff saw a newly installed camera. The following day, Plaintiff found Robert [LNU] laughing in the stairwell while

11

watching a video of her bending over to clean, with the camera angle directed at her butt, on his cellphone. She found that the specific camera was removed shortly thereafter while the original secuirty cameras remained.

40.     In or around June 2016, Plaintiff and her co-worker, Jose [LNU], asked Verve [LNU] for a raise. After not hearing from Verve [LNU] for a few weeks, when they approached Verve [LNU] again, he agreed to a raise for all cleaning personnel and informed them that he would provide the paperwork a week later. A week later, Plaintiff's co-worker, Jose [LNU] signed paperwork related to his raise and received a $2.00 raise. Jose [LNU] informed Plaintiff that she should be receiving hers soon because other cleaning personnel also saw her paperwork included in the stack of papers when they signed for their raise. However, instead of providing Plaintiff with the paperwork for a raise, Defendants scheduled a meeting for her with David Rodriguez, John [LNU], and Robert [LNU].

41.     On or about July 28, 2016, Plaintiff met with David Rodriguez, John [LNU] and Robert [LNU]. They informed her that she would receive a raise at the end of the year if she improved her job performance, and that the raise would be $1.00. Plaintiff questioned Mr. Rodriguez, John [LNU] and Robert [LNU] regarding the raise and informed them that other cleaning personnel already informed her that her paperwork for a raise was previously prepared along with all other cleaning persons. During the meeting, they responded that the other cleaning personnel should not have told her that her paperwork was prepared as it was confidential and they informed Plaintiff that Robert [LNU] complained of her poor work performance. Plaintiff told Mr. Rodriguez, John [LNU] and Robert [LNU] that it was "discrimination" that she had to prove that she deserved a raise and that she would only receive a $1.00 raise, versus the $2.00 raise that her male counterparts were receiving. After Plaintiff

said "discrimination," John [LNU] reacted violently by slamming the door and throwing an object across the room. Robert [LNU] told her that it was not a word that she was allowed to use. They immediately retrieved Eric Fleisher, Head of Finance, to participate in the meeting. After Plaintiff told them that they were discriminating against her, they tried to force Plaintiff to sign documents that she could not understand. Eric Fleisher informed her that she would have problems if she did not sign the documents. Due to the mental and emotional strain of the meeting, Plaintiff was hospitalized.

42.     Plaintiff returned to work a few days after she was hospitalized. Upon her return, in an attempt to dissuade her from seeking legal relief, John [LNU], Robert [LNU], and David Rodriguez welcomed her back with a surprise cake and attempted to be nice to Plaintiff. However, when Plaintiff was not receptive to their behavior, they assigned even more cleaning tasks to Plaintiff and rushed her through her job to put pressure on her to force her to quit.

43.     For over three months, Defendants increased the number of cleaning tasks assigned to Plaintiff, to be fulfilled within the same timeframe, to force Plaintiff to quit. However, in or around Fall 2016, after Plaintiff filed a complaint with the Department of Labor, Defendants ultimately terminated Plaintiff's employment in retaliation on or about November 30, 2016.

44.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

45.     Plaintiff realleges and reavers Paragraphs 1 through 44 of this Class and Collective Action Complaint as if fully set forth herein.

46.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

47.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

48.     At all relevant times, Defendant had gross annual revenues in excess of $500,000.00.

49.     At all relevant times, Defendants engaged in a policy and practice of refusing to pay wages, including overtime compensation at the statutory rate of time and one-half, to Plaintiff and FLSA Collective Plaintiffs for all hours worked due to Defendants' policy of time shaving.

50.     Defendants failed to pay Plaintiff and FLSA Collective Plaintiffs their wages in the lawful amount for all of their hours worked due to Defendants' policy of time shaving.

51.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if

necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

52.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked when Defendants knew or should have known such was due.

53.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

54.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

55.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages and an equal amount as liquidated damages.

56.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW
### ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS

57.     Plaintiff realleges and reavers Paragraphs 1 through 56 of this Class and Collective Action Complaint as if fully set forth herein.

58.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law §§2 and 651.

59.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them wages, including overtime compensation at the statutory rate of time and one-half,

for all hours worked due to Defendants' policy of time shaving.

60.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

61.     Defendants knowingly and willfully failed to provide proper wage and hour notices to employees at the beginning of employment and annually thereafter pursuant to the requirements of the New York Labor Law.

62.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

63.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

64.     Defendants failed to provide proper wage statements with every payment as required by New York Lab. Law § 195(3).

65.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages due to time-shaving, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

<u>**COUNT III**</u>

<u>**VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**</u>

66.     Plaintiff realleges and reavers Paragraphs 1 through 65 of this Class and Collective Action Complaint as if fully set forth herein.

67.     The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of an individual's sex and sexual harassment.

68.     Plaintiff is an employee and a qualified person within the meaning of NYSHRL and Defendants are covered employers under the NYSHRL.

69.     Defendants operated a business that discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment, in the form of failing to address the constant harassment made against Plaintiff for her complaint against Robert [LNU] and disparate treatment due to her sex, and by terminating Plaintiff's employment in retaliation for filing a complaint with the Department of Labor.

70.     Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under the New York Executive Law § 296.

71.     As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

72.     Due to Defendants' violations under the New York State Human Rights Law, Plaintiff is entitled to recover from Defendants: (1) back pay and (2) compensatory damages.

## COUNT IV

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

73.     Plaintiff realleges and reavers Paragraphs 1 through 72 of this Class and Collective Action Complaint as if fully set forth herein.

74.     The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of an individual's gender and sexual harassment.

75.     Defendants has and has had at all relevant times herein, at least four (4) persons in their employ. Plaintiff is an employee and a qualified person within the meaning of NYCHRL and Defendants are covered employers under the NYCHRL.

76.     Defendants operated a business in New York City that discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to a hostile work environment, in the form of failing to address the constant harassment made against Plaintiff for her complaint against Robert [LNU] and disparate treatment due to her gender, and by terminating Plaintiff's employment in retaliation for filing a complaint with the Department of Labor.

77.     As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future physical and emotional distress and the costs of bringing this action.

78.     Due to Defendants' violations under the New York City Human Rights Law, as amended, Plaintiff is entitled to recover from Defendants: (1) back pay, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## COUNT V

## DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (SUPERVISOR LIABILITY)

79.     Plaintiff realleges and reavers Paragraphs 1 through 78 of this Class and Collective Action Complaint as fully set forth herein.

80.     Under, New York City Administrative Code Title 8-107(13), an employer is liable for the discriminatory conduct by an employee, agent or independent contractor. The relevant code provides:

(a) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
(b) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
(1) the employee or agent exercised managerial or supervisory responsibility; or
(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an

employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

81.    Defendants violated the section cited herein as set forth. Defendants' managers are supervisors in a managerial capacity. They discriminated against Plaintiff based on Plaintiff's gender and her sexual harassment complaint, and retaliated against Plaintiff for filing a complaint with the Department of Labor.

82.    At all relevant times, Defendants operated a business that discriminated against Plaintiff on the basis of her gender and sexual harassment complaints.

83.    Defendants willfully violated the New York City Human Rights Law, as amended.

84.    Due to Defendants' violation of New York City Human Rights Law, as amended, on the basis of Defendants' discriminatory practices, Plaintiff is entitled to recover from Defendants: (1) back and front pay, (2) compensatory and punitive damages and (3) attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the New York Labor Law, the New York State Human Rights Law, and the New York City Human Rights Law;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them

19

as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, including those at the overtime premium rate, due under the FLSA and the New York Labor Law due to Defendants' policy of time-shaving;

d.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

e.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay  proper wages pursuant to the New York Labor Law;

f.  An award of back pay and compensatory damages due under the New York State Human Rights Law;

g.  An award of back pay and compensatory damages due under the New York City Human Rights Law;

h.  An award of punitive damages due under the New York City Human Rights Law;

i.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

l.  Designation of Plaintiff as Representative of Class; and

m. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: New York, New York
        November 7, 2018

                                        Respectfully submitted,

                                        LEE LITIGATION GROUP, PLLC
                                        C.K. Lee (CL 4086)
                                        Anne Seelig (AS 3976)
                                        30 East 39th Street, Second Floor
                                        New York, NY 10016
                                        Tel.: 212-465-1188
                                        Fax: 212-465-1181
                                        *Attorneys for Plaintiff, FLSA Collective Plaintiffs*
                                        *and the Class*

                                 By: */s/ C.K. Lee*
                                        C.K. Lee (CL 4086)